NELSON DRAINAGE DISTRICT v BAY

Docket No. 118899. Submitted November 19, 1990, at Detroit. Decided
April 15, 1991, 10:00 A.M.

The Nelson Drainage District brought a condemnation action in
the Oakland Circuit Court, seeking to acquire property owned
by Thomas A. Bay and others. The plaintiff retained an expert
real estate appraiser whom it initially listed as a witness who
would testify at trial, but later withdrew from the list. Upon
motion by the defendants, the court, Gene Schnelz, J., ordered
that the appraiser be made available for deposition by the
defendants. The plaintiff appealed by leave granted.

The Court of Appeals *held:*

Facts known or opinions held by an expert retained by a
party but not expected to be called as a witness at trial are
subject to discovery by the other party only on a showing of
exceptional circumstances under which it is impracticable for
the party seeking discovery to obtain facts or opinions regard-
ing the same subject. Because no such showing was made in
this case, the trial court erred in granting the defendants'
motion for discovery.

1. MCR 2.302(B)(4), which governs discovery of facts known
and opinions held by experts and acquired or developed in
anticipation of litigation or for trial, has separate provisions for
those experts who are expected to testify at trial and for those
who are not. If a party's expert is expected to testify, the other
party may take the expert's deposition. However, if the expert
is not expected to testify, discovery is available only upon a
showing of exceptional circumstances. While pretrial exchange
of discovery regarding experts to be used as witnesses aids in
narrowing the issues, preparation of cross-examination, and the
elimination of surprise at trial, there is no need for a compara-
ble exchange of information regarding nonwitness experts who
act as consultants and advisors to counsel regarding the course
the litigation should take.

2. In this case, the plaintiff's initial decision to list the real
estate appraiser as a witness and its subsequent decision to
withdraw the appraiser as a witness were made as a matter of
permissible trial strategy. Once the appraiser was withdrawn

as a witness, discovery with respect to the appraiser was available only upon a showing of exceptional circumstances.

3. Because expert valuation of the defendants' property was a subject about which the defendants could obtain facts and opinions other than those known or held by the appraiser, the defendants failed to make a showing of exceptional circumstances warranting compelled discovery of the appraiser.

Reversed.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *William P. Hampton* and *Lanie Anderson*), for the plaintiff.

*Ackerman & Ackerman, P.C.* (by *Alan T. Ackerman*), for the defendants.

Before: MARILYN KELLY, P.J., and HOLBROOK, JR., and SULLIVAN, JJ.

SULLIVAN, J. Plaintiff appeals by leave granted a June 19, 1989, order allowing defendants to depose Melvin Jacobs, an expert retained by plaintiff but not expected to be called as a witness at trial. We reverse.

The matter before us is a condemnation action. The only underlying issue is the amount of just compensation owed to defendant landowners for their property which was acquired by plaintiff Nelson Drainage District for the construction and development of a relief storm drain. The only issue in this interlocutory appeal is whether the trial court erred in allowing defendants to depose Melvin Jacobs.

This action was started in 1985. Mediation and trial were repeatedly adjourned to allow the parties to obtain appraisals of the value of the property at issue. In 1987, plaintiff retained Melvin Jacobs, an expert real estate appraiser, as a second appraiser. Plaintiff and defendants stipulated to

adding Jacobs to the witness list. After Jacobs completed his appraisal, however, plaintiff decided not to call him as a witness at trial, and his name was deleted from the witness list.

Defendants thereafter subpoenaed Jacobs to produce his appraisal and any written communication relating to the condemnation proceedings. Plaintiff responded by moving to quash the subpoena pursuant to MCR 2.302(B)(4)(b) because, it claimed, defendants had not shown "exceptional circumstances under which it is impracticable for them to obtain the facts or opinions on the same subject by other means." Plaintiff noted that defendants had retained their own expert appraisers and therefore had no need to discover Jacobs' appraisal. In turn, defendants claimed that because they had agreed to numerous delays on the basis of plaintiff's assertion that Jacobs' appraisal would be used to further settlement, exceptional circumstances existed.

The court granted plaintiff's motion to quash the subpoena. However, the court subsequently permitted defendants to interview, but not depose, Jacobs because defendants could call Jacobs as their own witness at trial with Jacobs' permission.

After consulting with his company's attorneys, Jacobs refused to talk to defendants. He claimed that the pertinent standards of practice and code of ethics prohibited him from speaking to defendants' attorney unless plaintiff consented or he was legally required to do so.

Leading to this appeal, the court then ruled that defendants could depose Jacobs. Exceptional circumstances existed, the court ruled, because Jacobs would not voluntarily speak to defendants' attorney. The court also denied plaintiff's motion for a protective order to prevent defendants from interviewing and calling Jacobs as a witness. The court explained:

[I]f I were to take your [plaintiff's] interpretation, we would be putting ourselves in the position that a high-powered plaintiff or defendant could run out and contact every available expert in connection with a particular matter and thus preclude the other side from ever obtaining merely because they contacted her. And as I understand, you contacted and you didn't like what the guy wanted to do and, therefore, you don't want to use him. And under that theory, Mr. Ackerman [defendants' attorney] is precluded from using him [Jacobs] ever. And that just doesn't smack of fair play to me.

The order from which plaintiff appeals provides that defendants shall be allowed to depose Jacobs. Whether Jacobs can be compelled to be deposed turns on our interpretation of MCR 2.302. MCR 2.302(B)(4)(a) and (b) govern the discovery of another party's experts' opinions which were acquired or developed in anticipation of litigation or for trial. Such opinions may be obtained only as provided in MCR 2.302(B)(4).

MCR 2.302(B)(4)(a) is directed at testimonial experts. MCR 2.302(B)(4)(a)(ii) provides that a party may take the deposition of an expert whom the other party expects to call at trial.

MCR 2.302(B)(4)(b), on the other hand, controls discovery of nonwitness experts and is virtually identical to the corresponding federal rule—FR Civ P 26(b)(4)(B). We therefore look to federal cases interpreting that rule for guidance. The Michigan rule provides:

A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as

> provided in MCR 2.311(B)[1] or on a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. [MCR 2.302(B)(4)(b).]

Subsection b gives more protection against discovery of these experts' opinions than subsection a does of testimonial experts. The greater degree of protection appears to be a function of the consultive or advisory role played by nonwitness experts. Day, *Expert Discovery in the Eighth Circuit: An Empirical Study,* 122 FRD 35, 38 (1988). Moreover, the reason for the more restrictive discovery standard in subsection b is that "while pretrial exchange of discovery regarding experts to be used as witnesses aids in narrowing the issues, preparation of cross examination and the elimination of surprise at trial, there is no need for a comparable exchange of information regarding non-witness experts who act as consultants and advisors to counsel regarding the course the litigation should take." *Mantolete v Bolger,* 96 FRD 179, 181 (D Ariz, 1982).

The first issue we must resolve is whether subsection b is the controlling rule in this case. Plaintiff argues that it is because Jacobs was retained by plaintiff in anticipation of or preparation for trial and, at the time defendants decided to depose Jacobs, he was not expected to be called as a witness at trial. On the other hand, defendants argue that subsection a(ii) controls because, at the time plaintiff retained Jacobs, he was expected to testify at trial. His name was added to, but later deleted from, the witness list.

We agree with plaintiff that subsection b controls. A similar issue under the corresponding

---

[1] MCR 2.311(B) deals with reports of examining physicians.

federal court rule was before the court in *Manto-lete.* There the defendant disclosed to the plaintiff the identity of an expert witness—a rehabilitation engineer. The plaintiff then filed a notice to depose the expert. Just days before the scheduled deposition, the defendant withdrew the expert as an expert witness who would testify at trial and notified the plaintiff that the expert would not voluntarily be produced for deposition. The plaintiff sought to compel the deposition. *Id.,* p 181.

The plaintiff argued to the court that the defendant's recharacterization of the expert as a non-witness was solely to avoid discovery. The court, however, rejected the plaintiff's argument, ruling that "[t]he defendant is permitted to execute the trial strategy it deems appropriate to defend its case; this extends to changing the status of an expert, which thereby narrows the scope of discovery." *Id.,* p 182, n 2. Because the expert would not testify and the plaintiff had alternate sources of expert information, the court ruled, no reason existed to disregard the federal rule which corresponds to subsection b. *Id.* The expert was a non-witness expert of the defendant and, therefore, the more restrictive discovery rule applied; the plaintiff was required to show that "exceptional circumstances" existed in order to depose the defendant's expert. *Id.,* p 182. Also see *In re Agent Orange Product Liability Litigation,* 105 FRD 577, 580 (ED NY, 1985).

Here, before Jacobs could be deposed, plaintiff decided not to call Jacobs as a witness at trial. Defendants do not dispute that plaintiff could so decide. At that point, Jacobs was a nonwitness expert who had been retained by plaintiff. We also note that the purposes of pretrial discovery regarding experts to be used as witnesses at trial—narrowing the issues, preparation of cross-examina-

tion and the elimination of surprise at trial—do not support permitting defendants to depose Jacobs once plaintiff decided not to call Jacobs as a witness at trial. Defendants merely wanted to engage in a fishing expedition to determine whether they could benefit from Jacobs' opinion. We conclude, therefore, that discovery of his opinion is governed by subsection b.

The next issue we must decide, then, is whether defendants showed "exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Resolution of this issue turns on the meaning of "same subject." Defendants would have us construe the phrase narrowly and therefore rule that the "same subject" is Jacobs' valuation method and opinion. Under this construction, only Jacobs could provide the answer. On the other hand, plaintiff would have us construe the phrase broadly and therefore rule that the "same subject" means expert valuations of defendants' property. Again, we agree with plaintiff. And, again, we are guided by federal cases construing the corresponding federal rule.

Addressing this same issue, the court in *Eliasen v Hamilton,* 111 FRD 396 (ND Ill, 1986), adopted the broad construction because it furthers a purpose of the restrictive discovery rule with regard to nonwitness experts—to protect a party from having its nonwitness expert's testimony used by its opponent. *Id.,* p 401. Also see *Bailey v Meister Brau, Inc,* 57 FRD 11, 14 (ND Ill, 1972). If we adopted defendants' approach, exceptional circumstances surely would almost always exist. And, we cannot believe that the drafters intended such a result. We therefore rule that "same subject" in this case means expert valuation of the pertinent property.

Here, exceptional circumstances do not exist. The trial court was concerned that a wealthy litigant could retain all of the experts on a subject and then decline to call them for trial, thereby depriving the opposing party of an expert. Such a concern is legitimate. However, no threat of that occurring exists in this case. Defendants retained two experts who had appraised the property. Hence, they do not claim that Jacobs is the only valuation expert or that no other valuation experts are available to them. Defendants, then, have other means to obtain opinions on the valuation of their property. Under such circumstances, defendants cannot depose Jacobs under subsection b. Federal courts take the same approach, i.e., if other experts are available with respect to the same subject, then exceptional circumstances do not exist. See, e.g., *Eliasen, supra,* p 402; *Mantolete, supra,* p 182; *Bailey, supra,* p 14.

We reverse the trial court's ruling that Jacobs could be deposed. Because of our resolution of this issue, we decline to address plaintiff's remaining issue. We further note that we have reviewed only the order from which plaintiff appeals.

Reversed.