DEPARTMENT OF TRANSPORTATION
v FRANKENLUST LUTHERAN CONGREGATION

Docket No. 257206. Submitted December 7, 2005, at Lansing. Decided
January 31, 2006, at 9:05 a.m.

The Department of Transportation brought a condemnation action
in the Bay Circuit Court against the Frankenlust Lutheran
Congregation and others, seeking a determination of just compen-
sation for property condemned and taken by the state under the
Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et
seq.* On cross-motions in limine, the court, William J. Caprathe, J.,
concluded that the department is not bound by statements and
offers of just compensation tendered before trial and may intro-
duce at trial a different valuation. The court also concluded that if
the department relies on a lower valuation of the property at trial
than previously offered pursuant to statute, the landowner may
introduce evidence of the department's higher, precondemnation
valuation for the purpose of rebutting the department's lower
valuation at trial. The department appealed by leave granted the
use of its earlier, higher valuation by the defendants, the defen-
dants appealed by leave granted the right of the department to
submit a new, lower valuation at trial, and the appeals were
consolidated.

The Court of Appeals *held*:

1. The circuit court did not err in concluding that the UCPA
does not prohibit a condemning authority from altering its deter-
mination of just compensation from that contained in both its
good-faith offer and its declaration of taking. The plaintiff may
present evidence of a lower property valuation at trial. The
good-faith offer of just compensation required by MCL 213.55(1)
does not establish a baseline for compensation from which the
authority may not go lower at trial. The goals of the UCPA include
making certain that the landowner is properly paid at public
expense for the land and that neither the property owner nor the
public should be enriched by the compensation. The condemning
authority is free to contest the issue of compensation by presenting
evidence of a lower, or higher, value at trial.

2. The initial appraisal and the good faith offer of just compensation from the condemning authority to the landowner are relevant at trial and admissible under MRE 401, if the authority seeks a lower valuation at trial. They are not evidence of pretrial compromise negotiations that would be inadmissible under MRE 408. The condemning authority is required by statute to establish and disclose, before initiating condemnation proceedings, what it believes in good faith to be the fair market value of the subject property. MCL 213.55(1). That offer is separate from negotiated and litigated settlements, and is presented before there is a claim to be compromised. The admission of the earlier, higher appraisal and the good-faith offer is not unfairly prejudicial under MRE 403.

Affirmed.

EMINENT DOMAIN — JUST COMPENSATION — TRIAL — EVIDENCE.

A condemning authority is not bound by precondemnation statements and offers of just compensation, and thus may obtain and introduce at trial a different valuation; if the condemning authority relies on a lower valuation of the property at trial, the landowner may introduce evidence of the higher, precondemnation valuation for the purpose of rebutting the authority's lower valuation (MCL 213.55[1]; MRE 403 and 408).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Patrick F. Isom*, Assistant Attorney General, and *Lawrence P. Schneider*, Special Assistant Attorney General, for the plaintiff.

*Monaghan, LoPrete, McDonald, Yakima, Grenke & McCarthy, P.C.* (by *Thomas J. McCarthy*), for the defendants.

Before: HOEKSTRA, P.J., and NEFF and DAVIS, JJ.

HOEKSTRA, J. In this action to determine just compensation for property condemned under the provisions of the Uniform Condemnation Procedures Act (UCPA), MCL 213.51 *et seq.*, we are asked to decide whether, and to what extent, the parties may present evidence of precondemnation and postcondemnation property valuations at the compensation trial. We hold that a con-

demning authority is not bound by precondemnation statements and offers of just compensation, and thus may obtain and introduce at trial a different valuation, but if the condemning authority relies on a lower valuation of the property at trial, the landowner may introduce evidence of the higher, precondemnation valuation for the purpose of rebutting the authority's lower valuation. We therefore affirm the trial court's order granting in part and denying in part the parties' motions in limine and remand this matter for proceedings consistent with this holding.

## I. BASIC FACTS AND PROCEDURAL HISTORY

As part of its plan to widen and improve a section of state highway M-84, plaintiff Michigan Department of Transportation (MDOT) found it necessary to acquire portions of property owned by defendants in Frankenlust Township. The UCPA, which governs the acquisition of property by public authorities through the power of eminent domain, see MCL 213.75, requires that before initiating negotiations for the purchase of property the authority "shall establish an amount that it believes to be just compensation for the property and promptly shall submit to the owner a good faith written offer to acquire the property for the full amount so established." MCL 213.55(1). Consistent with this statutory requirement, MDOT hired real estate appraiser Walter Frisbie, who, relying in part on a separate fixture appraisal, concluded that the fair market value of the property to be taken in connection with the highway project totaled $589,900, including damages to the remainder and any "costs-to-cure." MDOT thereafter submitted to defendants a written "good faith offer" to purchase the subject property for $592,523—the appraised value of the property to be taken plus appli-

cable permit fees necessary to cure damages to the property arising from the widening and improvement project—which amount MDOT indicated "represents the sum total of just compensation based on market data for the property . . . ."

After defendants rejected the offer, MDOT initiated this suit to condemn the property under the UCPA. As required by MCL 213.55(4), MDOT alleged in its complaint that a partial taking of defendants' property was necessary to the highway project, and incorporated by reference a declaration of taking in which the department estimated that just compensation for the taking was $592,523. Because defendants did not contest the necessity of the taking within the period set forth in MCL 213.56, title to the property vested in MDOT on the date of filing of the complaint, with a concomitant "right to just compensation" for the property vesting in defendants. See MCL 213.57. An order providing for payment to defendants of the estimated just compensation, "for or on account of the just compensation that may be awarded" at a subsequent compensation trial, MCL 213.58, was entered and satisfied. See also MCL 213.63.

Thereafter, in preparation for trial, MDOT sought and received a second appraisal prepared by real estate appraiser Edward Stehouwer, who, differing with Frisbie, concluded that the fair market value of the property taken, including damages to the remainder and all necessary permits, totaled just $409,777.[1] Upon discovering that MDOT would rely on Stehouwer's lower valuation at the compensation trial, defendants moved to exclude the Stehouwer appraisal from evidence on the ground that the UCPA did not authorize a condemn-

---

[1] Defendants commissioned their own real estate appraisal, which concluded that fair market value of the property taken is $1,707,000.

ing authority to lower its determination of just compensation from that contained in both its good-faith offer and declaration of taking. However, noting that the UCPA provides that property taken pursuant to its procedures is to be valued as of the date of the filing of the condemnation complaint, see MCL 213.70(3), MDOT responded that the UCPA did not prohibit it from altering its precondemnation determination of just compensation. Arguing further that a condemning authority's precondemnation determination of just compensation is not itself evidence of the value of the property taken, MDOT moved to exclude any reference to the Frisbie appraisal, or its good-faith offer and estimate of just compensation based thereon.

Finding that nothing in the UCPA or the "general principles of law" precludes a condemning authority from obtaining a postcondemnation appraisal that is lower than its precondemnation determination of just compensation, the trial court denied defendants' motion to exclude the Stehouwer appraisal. The trial court similarly found no statutory or evidentiary impediment to the admission the Frisbie appraisal, or MDOT's good-faith offer and estimate of just compensation based on that appraisal, and, reasoning that excluding such information "would be keeping valuable information from the jury and would result in some sort of synthetic result that would not be fair and just," denied MDOT's motion to exclude that evidence at trial. This Court granted leave for an interlocutory appeal of the trial court's rulings in these regards.

II. ANALYSIS

Defendants argue that the trial court erred in concluding that the UCPA does not prohibit a condemning authority from altering its determination of just com-

pensation from that contained in both its good-faith offer and its declaration of taking and, therefore, does not preclude MDOT from presenting evidence of a lower property valuation at trial. We disagree.

Evidentiary rulings are, in general, reviewed for an abuse of discretion. *Chmielewski v Xermac, Inc*, 457 Mich 593, 614; 580 NW2d 817 (1998). However, preliminary issues of law, such as the interpretation of statutes, are reviewed de novo. *MDOT v Haggerty Corridor Partners Ltd Partnership*, 473 Mich 124, 134; 700 NW2d 380 (2005); *Attorney General v Michigan Pub Service Comm*, 249 Mich App 424, 434; 642 NW2d 691 (2002). When interpreting a statute, our goal is to ascertain and give effect to the intent of the Legislature evinced by the plain language of the statute. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003).

As previously noted, the UCPA governs the acquisition of property by public agencies through the power of eminent domain, and provides that

> [b]efore initiating negotiations for the purchase of property, *the agency shall establish an amount that it believes to be just compensation for the property and promptly shall submit to the owner a good faith written offer to acquire the property for the full amount so established. . . .* The amount shall not be less than the agency's appraisal of just compensation for the property. . . . The agency shall provide the owner of the property and the owner's attorney with an opportunity to review the written appraisal, if an appraisal has been prepared, or if an appraisal has not been prepared, the agency shall provide the owner or the owner's attorney with a written statement and summary, showing the basis for the amount the agency established as just compensation for the property. If the agency is unable to agree with the owner for the purchase of the property, after making a good faith written offer to purchase the property, the agency may file a complaint for the acquisition of the

property in the circuit court in the county in which the property is located. . . . The complaint shall ask that the court ascertain and determine just compensation to be made for the acquisition of the described property. . . . [MCL 213.55(1) (emphasis added).]

Citing the language emphasized above, defendants argue that the UCPA plainly contemplates that the amount determined by a condemning authority to constitute just compensation for purposes of its good-faith offer to purchase "establishes" a baseline for compensation from which the authority cannot go lower at a subsequent condemnation trial. We do not agree.

When interpreting a statute "we consider both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999), quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995); see also *Draprop Corp v City of Ann Arbor*, 247 Mich App 410, 415; 636 NW2d 787 (2001) (statutory language should be construed reasonably, keeping in mind the purpose of the act). The ultimate purpose of the statutory scheme at issue here is to ensure the guarantee of just compensation found in Const 1963, art 10, § 2, which provides, "Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law." In prescribing the manner in which just compensation for the taking of private property is to be "made or secured," the UCPA provides that tendering a good-faith offer to purchase is a necessary precondition to the filing of a condemnation action. MCL 213.55(1); see also *In re Acquisition of Land for the Central Industrial Park Project*, 177 Mich App 11, 17; 441 NW2d 27 (1989) (tendering a good-faith offer under MCL 213.55 is a necessary precondition to invoking the jurisdiction of

the circuit court in a condemnation action). The purpose in requiring that a condemning authority first offer to purchase property for an amount no less than that which it believes to be full and just compensation is to encourage negotiated purchases of property needed for a public purpose and, thereby, avoid condemnation litigation entirely. See *Novi v Woodson*, 251 Mich App 614, 625; 651 NW2d 448 (2002); see also 42 USC 4651.[2] Where such negotiations fail, however, the UCPA fulfills its constitutional purpose by requiring that just compensation for the property taken be determined by a trier of fact in a court of record. MCL 213.63; see also Const 1963, art 10, § 2. As correctly argued by MDOT, the "just compensation" contemplated by the Michigan Constitution and the UCPA must be based on the fair market value of the property on the date of the taking, which, in this case, is the date of the filing of a condemnation complaint. MCL 213.70(3); *Silver Creek Drain Dist v Extrusions Division, Inc*, 468 Mich 367, 378-379; 663 NW2d 436 (2003). However, as explained by our Supreme Court in *In re Widening of Michigan Ave*, 280 Mich 539, 548; 273 NW 798 (1937), this "determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion based upon a consideration of all the relevant facts in a particular case." Because those facts may change between the time of the good-faith offer and the filing of the condemnation complaint, i.e., the date of valuation, the UCPA cannot be reasonably construed to prohibit a condemning authority from altering its precondemna-

---

[2] As discussed later in this opinion, the language of § 4651(3) of the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 USC 4601 *et seq.*, the express purpose of which is "to encourage and expedite the acquisition of real property by agreements with owners," 42 USC 4651, is substantially the same as that of § 5(1) of the UCPA, MCL 213.55(1).

tion determination of just compensation. Indeed, the UCPA contemplates such changes by providing for the postfiling "exchange of the agency's *updated* appraisal report, if any, and the owner's appraisal report." MCL 213.61(3) (emphasis added).

Moreover, it is well settled that the goal of just compensation is to ensure that the injured party is restored, at least financially, to the same position it would have been in if the taking had not occurred. *State Hwy Comm'r v Eilender*, 362 Mich 697, 699; 108 NW2d 755 (1961). It is equally well established, however, that such compensation should enrich neither the property owner at public expense nor the public at the property owner's expense. *Id.* To hold that the UCPA prohibits altering a condemning authority's precondemnation determination of just compensation, regardless of error or a change in circumstances, is inconsistent with such goals.[3] Thus, while the tender of a good-faith written offer based on a precondemnation appraisal enables a condemning authority to institute condemnation proceedings and take title to the land where an attempt to purchase the property outside condemnation fails, neither the offer nor the appraisal on which it is based establishes the value of the property under the UCPA. To the contrary, acquisition by condemnation is by trial de novo on the question of compensation,[4] at which it is the function and duty of the trier of fact to determine the value of the property taken. *St Clair Shores v Conley*, 350 Mich 458, 464; 86 NW2d 271 (1957). As such, a condemning authority is not bound by its

---

[3] For this reason, we reject defendants' assertion that the principles of equitable estoppel preclude a condemning authority from altering its precondemnation determination of just compensation.

[4] See Const 1963, art 10, § 2, which provides that "just compensation" for a taking of private property for public use "shall be determined in a court of record."

precondemnation determination of value and is free to contest the issue of just compensation by presenting evidence of a lower, or even higher, value at trial.

This is not to say, however, that a precondemnation valuation by the condemning authority is not relevant to the proceedings. Indeed, the fundamental goal of the trial proceeding is to supply to the trier of fact evidence of the property's fair market value. Because the Frisbie appraisal was commissioned to address this ultimate issue, it is relevant to that determination. MRE 401. In recognizing that the Frisbie precondemnation appraisal might be admissible at trial to rebut the Stehouwer appraisal, MDOT generally concedes this point in its brief on appeal. MDOT asserts, however, that unless it challenges the credibility of the Frisbie appraisal, defendants should not be permitted also to reveal to the trier of fact that MDOT retained Frisbie and approved his appraisal in making its offer and declaration of taking, because such information would be unfairly prejudicial under MRE 403. MDOT also maintains that the precondemnation appraisal and offer are in the nature of settlement negotiations inadmissible under MRE 408, which precludes the admission into evidence of conduct or statements made in compromise of a disputed claim.[5] We do not agree with either of these assertions.

We acknowledge that, like the compromise negotiations contemplated by MRE 408, a precondemnation

---

[5] Specifically, MRE 408 provides in relevant part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

appraisal and offer under the UCPA is designed to encourage negotiations and avoid litigation. *Novi, supra.* However, unlike the compromise negotiations contemplated by MRE 408, a condemning authority is required by statute to establish and disclose, before initiating condemnation proceedings, what it believes in good faith to be the fair market value of the subject property. MCL 213.55(1). As such, MRE 408 does not bar admission of information pertaining to the good-faith offer or the appraisal on which it was based because under the UCPA, the good-faith offer is separate from negotiated and litigated settlements. Indeed, under the procedures outlined by the UCPA, a complaint for condemnation cannot be filed and the taking cannot occur before the good-faith offer is made. Thus, until a complaint for condemnation is filed, there is no "claim" to be compromised under MRE 408. Accordingly, a good-faith offer made pursuant to the requirements of the UCPA is not an offer to compromise a claim under MRE 408.[6]

Our decision in this regard is bolstered by that of the United States Court of Appeals for the Fifth Circuit in *United States v 320.0 Acres of Land,* 605 F2d 762, 825 (CA 5, 1979), in which the court considered provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act (URA), 42 USC 4601 *et seq.,* which establishes uniform guidelines for the public taking of private lands by agencies of the federal government that are, in relevant part, strikingly similar

---

[6] For this reason, we reject MDOT's reliance on *Nelson Drainage Dist v Bay,* 188 Mich App 501; 470 NW2d 449 (1991), as support for the proposition that, as a nonwitness expert, Frisbie can be neither deposed nor subpoenaed by defendants to testify at trial regarding his having prepared an appraisal for MDOT. Indeed, unlike the appraiser in *Nelson,* Frisbie was not hired by MDOT in "anticipation of litigation or preparation for trial . . . ." MCR 2.302(B)(4)(b).

to that of the UCPA.[7] There, the condemning authority, following the guidelines set in 42 USC 4651, provided the landowners a statement of its estimate of what it had determined to be just compensation for the property to be taken. *Id.* at 823-824. At trial, the condemning authority presented evidence of lesser values and argued that FRE 408 precluded introduction by the landowners of its statement of just compensation because the figure contained therein was used in settlement negotiations. *Id.* at 824. The Fifth Circuit held that the statement of just compensation was an admission by the condemning authority and was proper evidence because, rather than being a negotiation figure, it was a statement of the amount to which the government believed the landowner was constitutionally entitled if negotiations should fail.

> The objective of the § 4651 procedure—including the provision of statements of just compensation and any ensuing negotiations—is the acquisition by purchase of privately-owned lands short of condemnation. Technically, at the time the statements are provided, there is no disputed claim, and hence no settlement negotiations of a disputed claim, to serve as the predicate of Rule 408. But even if Rule 408 is viewed to apply to the negotiations envisioned by § 4651, there is no reason to extend it to the statements of just compensation. For, under § 4651, they are simply "statements" of the "amount . . . established as just compensation" after an approved appraisal of the fair

---

[7] Like § 5(1) of the UCPA, the URA provides in § 4651(3) that

> [b]efore the initiation of negotiations for real property, the head of the Federal agency concerned shall establish an amount which he believes to be just compensation therefor and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property. [42 USC 4561(3).]

market value of the property; they are not "offers," which under § 4651 may well be for more than the appraised fair market value.[8] In other words, they are statements of the amount which the Government believes the landowner is constitutionally entitled to should negotiations fail and condemnation proceedings be initiated. As such, the policy reasons for excluding offers of compromise . . . are not applicable to these statements. [*Id.* at 824-825.]

The court further concluded that because such a statement is required to represent "a good faith assessment of what the owner is constitutionally due, made by one authorized . . . to make that [very] statement," a precondemnation determination of value by a condemning authority is properly admissible when the authority, during a compensation trial, attempts to establish a lower value for the property in question. *Id.* at 825. We find the Fifth Circuit's reasoning to be sound, and adopt

---

[8] Cf. *Washington Metro Area Transit Auth v One Parcel of Land*, 548 F2d 1130, 1131 (CA 4, 1977), holding that a landowner who rejects a precondemnation offer made pursuant to § 4651(3) of the URA may not introduce that offer as proof of value in the subsequent compensation trial involving that offer, because

> [t]he purpose of a pre-condemnation offer under the Act is to expedite acquisition and avoid litigation. The Act says that the offer must not be less than reasonable market value. If the offer is to serve its purpose, it must include something more than reasonable market value for usually the seller is not a willing one and the offer's purpose is the avoidance of delay and the expense of the condemnation proceedings. To permit the offer to be received in evidence in effect would put a floor on recoveries in condemnation proceedings. No amount of explanation would prevent the jury from giving the landowner at least that much. There would be less incentive to accept the offer, and the purpose of the Act would be frustrated.

Here, it is not disputed that the good-faith offer to purchase did not include a "premium" for settlement, but rather was based solely on the value establish by Frisbie in his appraisal.

it in this case.[9] Indeed, both § 4651(3) of the URA and § 5(1) of the UCPA require that the condemning authority establish what it believes to be just compensation before initiating negotiations for the purchase of private lands. The UCPA further requires that this "estimate" of just compensation be annexed to the declaration of taking of property for public purposes, and that any appraisal on which that estimate is based must be provided to the landowner at the time of the good-faith offer. MCL 213.55(1) and (4)(e)(iii).

We further find, contrary to MDOT's assertion, that the admission of such evidence at trial would not be unfairly prejudicial under MRE 403. Unfair prejudice, as contemplated by MRE 403, "exists when marginally relevant evidence might be given undue or preemptive weight by the jury or when it would be inequitable to allow use of such evidence." *Allen v Owens-Corning Fiberglas Corp*, 225 Mich App 397, 404; 571 NW2d 530 (1997). Here, insofar as the evidence in dispute concerns statutorily mandated precondemnation determination of the just compensation constitutionally due defendants, it is more than just "marginally relevant." *Id*. Moreover, as recognized by the court in *320.0 Acres*, *supra* at 825, "as [is] generally true of all admissions, [the condemning authority's precondemnation determination of value] is not binding, and the Government is free to explain [at trial] why it now believes its earlier appraisal to be inaccurate." The UCPA requires that the state deal with the landowner in a fair and honest manner, and refrain from coercive tactics "to compel an

---

[9] In doing so, we note that the rationale of *320.0 Acres of Land* has been followed by courts in other states. See, e.g., *Thomas v State*, 410 So 2d 3, 4-5 (Ala, 1981); *Cook v State*, 105 Misc 2d 1040, 1045-1048; 430 NYS2d 507 (1980); *Arkansas State Hwy Comm v Johnson*, 300 Ark 454, 462-463; 780 SW2d 326 (1989).

agreement on the price to be paid for the property . . . ." MCL 213.74. Thus, a condemning authority may not, in the name of the public good, coerce private landowners into taking less than fair and adequate compensation for their property. See *320.0 Acres, supra* (the condemning authority "is not completely free to play fast and loose with landowners—telling them one thing in the office and something else in the courtroom"). Permitting the landowner to dispute a condemning authority's contention of a lower value at trial is consistent with the liberal manner in which evidence in condemnation cases has traditionally been received in Michigan, see *Grand Rapids v HR Terryberry Co*, 122 Mich App 750, 755; 333 NW2d 123 (1983), and "will serve as a limited [and wholly appropriate] check on the broad powers of the State in condemnation proceedings," *Thomas v State*, 410 So 2d 3, 4 (Ala, 1981).

Accordingly, we hold that although a condemning authority is not bound by precondemnation statements and offers of just compensation, and thus may obtain and introduce at trial a different valuation, a landowner may, if the condemning authority seeks to establish a lower valuation for the property at trial, introduce evidence of the higher, precondemnation valuation for the purpose of rebutting the authority's lower valuation.[10]

---

[10] In reaching this conclusion we reject MDOT's reliance on *State Hwy Comm v Koepnick*, 86 Mich App 192, 196; 272 NW2d 235 (1978), wherein a panel of this Court held that a landowner may not use the condemning authority's statement of estimated compensation, or related appraisals, as admissions by the authority of the value of the property. *Koepnick* was decided before the requirements of Michigan's "quick take" condemnation law were altered by the enactment of the UCPA and its express requirement that a precondemnation good-faith offer to purchase private property be preceded by, and be no less than, an amount "established" and "believed" by the condemning authority to be just compensation for

We therefore affirm the trial court's order granting in part and denying in part the parties' motions in limine and remand this matter for proceedings consistent with this opinion. We do not retain jurisdiction.

---

the property, MCL 213.55(1). See 1966 PA 295, § 6, repealed by 1980 PA 87, § 26. The current state of the law is thus distinctly different from that at the time *Koepnick* was decided.